## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **KAMEL B. JONES, JR.** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | **CASE NO. 1:22-CV-02628-JRR** |
| | ) | |
| **THE CITY OF SALISBURY, MD &** | ) | |
| **BARBARA DUNCAN** | ) | |
| | ) | |
| **Defendants** | ) | |

## MEMORANDUM IN SUPPORT OF DFEENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE FOR SUMMARY JUDGMENT

Defendants Barbara Duncan and the City of Salisbury, Maryland, by their undersigned counsel, pursuant to Federal Rules of Civil Procedure 12(b)(6) and 56, move to dismiss or, in the alternative, for summary judgment on all claims in the Complaint.

## INTRODUCTION

On May 12, 2021, Chief Barbara Duncan of the Salisbury Maryland Police Department (the "Department") requested Mr. Jones' resignation in lieu of termination for violating the Department's Code of Conduct by using his cell phone to take a picture of a partially nude woman lying on the floor in the Department's lobby and disseminating that picture via the Snapchat application on his cell phone.  Mr. Jones agreed to resign from his position as a *Police Communications Officer*, but filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), and, ultimately, this lawsuit in which he asserts a single count for employment-based discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq* against the City of Salisbury and Chief Duncan.  ECF 1.  Specifically, Mr. Jones alleges that he was disciplined more harshly than *Salisbury Police Officers* because he is African American.

The Defendants are entitled to dismissal and/or summary judgment on Mr. Jones' claims. Chief Duncan is entitled to dismissal of the Complaint against her in her official capacity because the claim is duplicative of the claim against the City of Salisbury ("Salisbury"). She is also entitled to dismissal of the Complaint against her in her individual capacity because individual supervisors are not employers under Title VII. Chief Duncan and Salisbury are entitled to dismissal of the claims implicated in paragraphs 9 through 22, 37, and 38 because Mr. Jones failed to exhaust his administrative remedies with respect to those claims. Finally, the Defendants are entitled to summary judgment on the remaining claims because the undisputed evidence is that Mr. Jones violated the Department's Code of Conduct and he was not subject to disparate discipline for that misconduct on the basis of his race.

## FACTS

The City hired Mr. Jones as a Police Communications Officer ("Communications Officer") on October 16, 2017. ECF 1. As a Communications Officer, Mr. Jones was responsible for answering emergency and non-emergency calls and gathering pertinent information and dispatching the appropriate assistance to sworn police officers. Ex. 3, Koerner Aff., ¶ 4. He was also responsible for promptly providing emergency responders with the information they needed to respond to calls, including information related to motor vehicles, driver's licenses, and criminal history. *Id*. Finally, Mr. Jones was responsible for performing status checks on first responders. *Id*.

On April 29, 2021, Chief Duncan directed Captain Koerner to investigate a complaint against Mr. Jones for violating the Department's Code of Conduct. *Id*. Mr. Jones was accused of using his cell phone to photograph a partially nude woman that was apparently having a mental health crises in the Department's lobby. *Id*. at ¶ 5. Through his investigation, Capt. Koerner

2

determined that on April 28, 2021, at approximately 2:43 p.m. a partially nude female entered the Department's building lobby. *Id*. at ¶ 6. She was wearing a trash bag that covered her chest, but was nude below her chest. *Id*.

Prior to the woman entering the building, Mr. Jones received a telephone call from the Maryland State Police dispatcher warning him that a passing State Trooper had observed the partially nude woman about to enter the Department lobby. Ex. 4, Jones Trans., p. 8:2-13. Mr. Jones was on duty in the Communications Room at that time. *Id*. The room has a video monitor that displays the live video feed from the Department's on-site video monitoring system. Ex. 3, Koerner Aff., at ¶ 7. The video feed from the security camera in the lobby is displayed on the communications room video monitor. *Id*.

Mr. Jones observed the woman through the Communications Room window and via the Department's CCTV. Ex. 4, Jones Trans., p 4:1-3. After entering the building, the woman walked around the lobby "talking incoherently," and eventually "she started throwing chairs around." *Id*. at pp. 8:21-9:9. Mr. Jones radioed for police officers to respond to the lobby. *Id*. By the time the officers reached her, she was lying down on the ground. *Id*.

After calling for the police officers to respond, Mr. Jones used his cell phone to take a picture of the Communications Room video monitor while it showed the woman lying mostly nude on the floor. *Id*. at pp. 9:13-10:10. As the woman was lying on the ground, the lower half of her body was exposed. *Id*. After taking the picture, Mr. Jones used the Snapchat application on his cell phone to forward the picture. *Id*. at p. 11:4-6. He forwarded the picture to Salisbury Officers Rodriguez, Ross, Robison, Strawser, Dean, and Eskridge. Ex. 3, Koerner Aff., at ¶ 9; Ex. 4, Jones Trans., p. 11:21-12:12. He also texted the picture to Cpl. Foy. Ex. 4, Jones Trans., pp. 11:17-20. Finally, Mr. Jones posted the picture for a brief time on his Snapchat story, which was shared for

a brief time with police officers who had previously worked for the Department, but had left for other employment. *Id*. at pp. 13:16-14:4.

Officer Rodriguez immediately notified Sgt. Hitty that he had received the picture. Ex. 3, Koerner Aff., at ¶ 9. Sgt Hitty reported the incident to Cpl. Foy and Lieutenant Tyler. *Id*. Cpl. Foy notified Sgt. Thomsen that he received a copy of the picture via text message from Mr. Jones. *Id*. at ¶ 10. Sgt. Thomsen ordered Mr. Jones to delete the picture from his cell phone and reported the incident to Lt. Tyler. *Id*.

Shortly after the picture was disseminated, Captain Drewer met with Mr. Jones and suspended him from duty. *Id*. at ¶ 11. All officers, except Cpl. Foy, were directed to delete the picture from their phones. *Id*. Cpl. Foy was subsequently directed to delete the picture from his cell phone after the picture was archived. *Id*.

On May 3, 2021, Capt. Koerner interviewed Mr. Jones. *Id*. at ¶ 12. Mr. Jones admitted that he took the picture despite being "familiar with the policy and stuff . . ." because he "just thought it was a joke, you know, for people who didn't witness it, like, other people on calls or people in the department." Ex. 4, Jones Trans., p. 16:12-22. Further, Mr. Jones confirmed that he was aware of the potential liability he created but, "at the time . . . thought no harm, no foul, you know. It's a little joke, you know." *Id*., p 17:10-18:11.

After completing his investigation, Capt. Koerner determined that Mr. Jones had taken the picture of a partially nude woman who had passed out in the Department lobby and forwarded it to others, including current and former Salisbury Officers, and that his actions violated Section 602 subsection (5) of the Department's Code of Conduct as they undermined the good order, efficiency, and discipline of the Department. Ex. 3, Koerner Aff., at ¶ 13. Capt. Koerner was concerned that Mr. Jones' actions exposed Salisbury to potential civil liability because his

dissemination of the picture created the possibility that the picture could end up in the public domain. *Id*. Finally, Capt. Koerner found Mr. Jones' explanation that he intended the picture to be humorous demonstrated that he lacked the compassion and maturity necessary to perform his job. *Id*. His actions were not in the best interests of the Department or the woman in the picture. *Id*. Mr. Jones met with Chief Duncan and was offered the opportunity to resign his position in lieu of termination. *Id*. at ¶ 14. He chose to resign. *Id*.

On February 14, 2022, Mr. Jones filed a Charge of Discrimination with the Equal Employment Opportunity Commission alleging that Salisbury discriminated against him on the basis of his race between May 1, 2021, and May 31, 2021, and ultimately forced him to resign his position. Ex. 1, Feb. 14, 2021, Charge of Discrimination. Specifically, Mr. Jones alleged that he was forced to resign for violating the Department Social Media Policy, but white Officers Sigmund, Miltt, and Sipple were not forced to resign for the same violation. Mr. Jones also alleged that Officer Bohtling was offered his job back after violating an undefined "Policy II." On July 15, 2022, the EEOC issued a right-to-sue letter to Mr. Jones. Ex. 2, July 15, 2022, Right-to-Sue letter.

## ARGUMENT

### I. LEGAL STANDARD

The Court should grant a motion to dismiss under Rule 12(b)(6) when the complaint fails to plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although the Court must accept the well-pled allegations as true, the Court "need not accept the legal conclusions drawn from facts, and . . . need not accept as true the unwarranted inferences, unreasonable conclusions or arguments." *Nemet Chevrolet, Ltd. v.*

*Consumeraffairs.com*, *Inc.*, 591 F.3d 250, 253 (4ᵗʰ Cir. 2009). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

"The function of a summary judgment proceeding is not to try the case or to attempt to resolve factual issues, but to determine whether there is a dispute as to a material fact sufficient to provide issues to be tried." *Berkey v. Delia*, 287 Md. 302, 303 (1980). "A genuine dispute of material fact is a dispute between the parties about a fact that will somehow affect the outcome of the case." *Lynx, Inc. v. Ordnance Products*, 273 Md. 1, 7-8 (1974). While the Court must view the facts in the light most favorable to the party opposing the motion (*Brown v. Wheeler*, 109 Md. App. 710, 717 (1996)), the opposing party "must proffer facts of a genuine material dispute that would be admissible at trial." *Beatty v. Trailmaster Prods., Inc.*, 330 Md. 726, 737-38. General "allegations that do not show facts in detail and with precision are insufficient to prevent summary judgment." *Lynx*, 273 Md. at 7-8. Accordingly, summary judgment is appropriate where "there is no genuine dispute as to any material fact and the moving party is entitled to a judgment as a matter of law." *Berkey*, 287 Md. at 303.

## II.   SALISBURY POLICE CHIEF BARBARA DUNCAN IS NOT A PROPER DEFENDANT UNDER TITLE VII AND ALL CLAIMS AGAINST HER SHOULD BE DISMISSED

It is unclear whether Mr. Jones intends to proceed against Chief Duncan in her individual or official capacity, or both. In the Complaint's introductory paragraph, Mr. Jones states that the Complaint is filed against "Barbara Duncan in her official capacity as Chief of the Salisbury, Maryland Police Department," but in paragraph 31 he alleges that Chief Duncan "acted both individually and under color of law as an agent or employee of the City of Salisbury, Maryland, and as Chief of the Salisbury Police Department." ECF 1, ¶ 31. Regardless, of whether Mr. Jones

is proceeding against Chief Duncan in her individual or official capacity, she is entitled to dismissal of the Complaint against her with prejudice.

The Complaint against Chief Duncan in her official capacity must be dismissed because the City is the real party in interest and a suit against her in her official capacity is duplicative of the claim against Salisbury. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (individual government official dismissed because governmental entity is the real party in interest); *Nivens v. Gilchrist*, 444 F.3d 237, 249 (4th Cir. 2006) (claim for monetary damages against public official is essentially a claim against the government entity); *Bradley v. Baltimore Police Dep't*, Civil No. JKB-11-1799, 2012 U.S. Dist. LEXIS 133966, *6 (D. Md. 2012) (claim against individual is "pointless . . . since a suit brought in that manner would still be, in effect, a suit against the Baltimore Police Department, which is already a defendant under these counts"). Because Mr. Jones has brought the same Complaint against Salisbury, the real party in interest, the Complaint against Chief Duncan in her official capacity is "pointless" and should be dismissed.

The Complaint against Chief Duncan in her individual capacity must also be dismissed because supervisors in their individual capacities are not employers under Title VII and, therefore, cannot be individually liable for Title VII violations. *Lissau v. Southern Food Serv, Inc.*, 159 F.3d 177, 180 (4th Cir. 1998) ("supervisors are not liable in their individual capacities for Title VII violations" because they are not "employers" within the meaning of the statute); *Lewis v. Baltimore City Bd. Of School Comm'rs*, 187 F. Supp.3rd 588, 594 (D. Md. 2016) ("Individuals cannot be held liable under Title VII . . . "). Because Chief Duncan cannot be liable in her official or individual capacities, the Complaint against her should be dismissed with prejudice.

### III.   Mr. Jones Has Not Exhausted His Administrative Remedies for the Claims Set Forth In Paragraphs 9 Through 22, 37 and 38

Before a plaintiff has standing to file suit under Title VII, he must first exhaust his administrative remedies by filing a charge with and obtaining a right-to-sue letter from the EEOC. 42 U.S.C. § 2000e-5(f)(1); *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000); *Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009) ("Before a plaintiff may file suit under Title VII . . ., he is required to file a charge of discrimination with the EEOC."); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 798 (1973) (plaintiff must obtain a "right-to-sue" letter before proceeding to federal court).  Because Maryland is a deferral state, a discrimination claim must be filed with the EEOC within 300 days of the alleged discriminatory conduct.  42 U.S.C. § 2000e-5e(1); *Karim v. Staples, Inc.*, 210 F. Supp. 2d 737, 748 (D. Md. 2002).  Title VII's charge-filing requirement is a mandatory processing rule (*Fort Bend Cnty. v. Davis*, 139 S. Ct. 1843, 1851 (2019); *United States v. Muhammed*, 16 F.4th 126, 129-30 (4th Cir. 2021)) and it must be enforced when it is raised.  *Walton v. Harker*, 33 F.4th 165, 175 (4th Cir. 2022).

The scope of plaintiff's right to file a federal lawsuit is determined by the charge's contents. *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132 (4th Cir. 2002).  "To determine whether a plaintiff has 'properly alleged [a claim] before the EEOC' in a manner satisfying the exhaustion requirement, courts "may look only to the charge filed with that agency."  *McCray v. Maryland Dept. of Transp.*, Case No. ELH-11-3732, 2014 WL 4660793, *21 (D. Md. Sept. 16, 2014) (quoting *Balas v. Huntington Ingalls Indus.*, 711 F.3d 401, 408).  "Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996). For example, courts may not consider plaintiff's intake questionnaire (*Balas*, 711 F.3d at 408) or

letters sent to the EEOC (*Sloop v. Mem'l Mission Hosp., Inc.*, 198 F.3d 147, 149 (4th Cir. 1999)) in determining whether an issue was property alleged before the EEOC.

Claims that "exceed the scope of the EEOC charge and any charges that would naturally have arisen from and investigation thereof, . . . are procedurally barred." *Balas*, 711 F.3d at 407 (quoting *Dennis v. Cnty of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995). For example, an allegation of a discrete act or acts in an administrative charge is insufficient when the plaintiff subsequently alleges a broader pattern of misconduct." *Chacko v. Patuxent Institution*, 429 F.3d 505, 509 (4th Cir. 2005). Similarly, a judicial complaint that alleges a "three-year course of conduct during which" a plaintiff was allegedly suspended and harassed exceeds the scope of a Charge that raised only two discrete incidents of alleged discrimination emanating from departmental disciplinary charges. *Bradley v. Balt. Police Dep't*, 2012 U.S. Dist. Lexis 133966, at *14-15. This is especially true were there was no evidence that the claims relating to the alleged "three-year course of conduct . . . were part of, or should have been part of, a reasonable investigation by the EEOC . . . ." *Id.* at 15. Further, a hostile work environment claim that is not included in an EEOC charge is not reasonably related to a claim for racially discriminatory discharge and is unlikely to be developed by a reasonable investigation of the original complaint, and, therefore has not been administratively exhausted prior to suit. *Finlay v. Fortis Institute-Towson*, Civil No. JKB-15-1184, 2015 WL 5920905, *5 (D. Md. Oct. 8, 2015); *See also Chacko*, 429 F.3d at 511 (claim for continuous harassment by a coworker is not within the scope of EEOC charges for failure to promote, harassment by a supervisor, and confrontations with a supervisor); *Dennis*, 55 F.3d at 153, 156-57 (4th Cir. 1995) ("[T]he allegation of a discrete act or acts in an administrative charge is insufficient when the plaintiff subsequently alleges a broader pattern of misconduct.").

A.    **The Claims in Paragraphs 9-22, 37, and 38 Were Not Exhausted in the Charge of Discrimination**

Here, Mr. Jones filed a Charge of Discrimination with the EEOC on February 14, 2022. Ex. 1, Charge of Discrimination.  In his Charge, Mr. Jones alleged that between May 1, 2021, and May 31, 2021, he was constructively discharged for violating the Department's Social Media Policy III while other "similarly situated white officers . . . were not forced to resign or disciplined for the same infraction." *Id*.  Mr. Jones also alleged that another white officer "was offered his job back with [the City] after violating policy II." *Id*.  The Charge, however, does not contain any of the allegations raised in paragraphs 9 through 22, 37 and 38 of the Complaint.

Specifically, the Charge does not allege that the Department discriminated against him by: suggesting that he not attend a Black Lives Matter ("BLM") protest outside the Department (ECF 1, ¶ 1); prohibiting him from attending the Acting Mayor's meeting with Salisbury Police Officers regarding the BLM Protests (*Id.* at ¶ 10); allegedly failing to take any of his suggested actions to ease tensions with the African American community (*Id.* at ¶ 12); failing to address his perception that the death of George Floyd and the BLM Movement were ignored while the Department provided significant support and outreach in response to the deaths of two police officers (*Id*. at ¶¶ 13-14); counseling him for a potential communications misunderstanding with the Fruitland Police Department (*Id*. at ¶¶ 15-16); failing to address two white officers racially-based comments relating to a chicken that was chasing a group of African Americans (*Id*. at ¶¶ 18-22 ); and failing to discipline officers for violating policies relating to time records, property room documentation, and the Department's tobacco policy (*Id*. at ¶¶ 37-38).  All of these alleged acts occurred prior to Mr. Jones' resignation, yet they were not included in the Charge and they do not parallel the conduct described in the charge.  In essence, Mr. Jones attempts to plead a hostile work environment claim in the judicial Complaint despite the fact that it was not pleaded in the EEOC

Charge.  Because the new claims in the Complaint reference conduct that is different than the factual allegations in his Charge, Mr. Jones has failed to exhaust his administrative relief with regard to these claims.  *Chacko*, 429 F. 3d at 506.  He simply cannot attempt to allege a broad pattern of discriminatory conduct in the Complaint because he did not previously do so in his Charge.  *Finlay*, 2015 WL 5920905 at *5; *Chacko*, 429 F.3d at 511 (claim for continuous harassment by a coworker is not within the scope of EEOC charges for failure to promote, harassment by a supervisor, and confrontations with a supervisor).

    **B.**     **The New Claims in the Complaint Are Not Reasonably Related to the Charge of Discrimination**

The new allegations raised in the Complaint, but not in the Charge of Discrimination are also not reasonably related temporally or factually to the claims in the EEOC Charge.  "To determine that a judicial complaint is reasonably related to an EEOC complaint, the court must find that the defendant had sufficient notice from the administrative charge of the alleged kinds of discrimination."  *Hodge v. Walrus Oyster Ale House*, Civil No. TDC-18-3845, 2019 U.S. Dist. LEXIS 198763, *15 (D. Md. 2019) (quoting *McGaw v. Biovail Pharmaceuticals, Inc.*, 300 F. Supp. 2d 371, 373 (D. Md. 2004)  Here, the EEOC Charge identifies a single discrete action, his May 2021 resignation in lieu of termination.  In contrast, the new allegations all occurred prior to the May 1, 2021, through May 31, 2021, period of discrimination identified in the Charge.  For example, the social media posts about which Mr. Jones complains in paragraph 27 were apparently posted by "Johnny Nitro" in 2013 and 2015, and the BLM post was created in June 2020.[1] Accordingly, the posts were made between one and eight years prior to the actions that led to his May 2021 resignation.  Additionally, at least two of the posts, were made before Mr. Jones was even employed by Salisbury.  Similarly, his allegations regarding the BLM Protests and the

---

1  The date on the fourth picture is too faint to identify.

meeting with the Acting Mayor occurred in June 2020, eleven months prior to his resignation. None of the new claims occurred during the same time period as Mr. Jones' resignation.

In addition to the temporal differences, the allegations are factually unrelated to Mr. Jones' resignation resulting from his photographing the partially nude woman, and, therefore, the Charge could not possibly have put Salisbury on notice of the new claims contained in paragraphs 9 through 22, 37 and 38. The new claims relate to different discrete events that Mr. Jones improperly attempts to bootstrap to the Complaint in order to create the appearance of a "broader pattern of misconduct" that was not alleged in the Charge. *Chacko*, 429 F.3d at 509.

**C.    The New Claims Would Not Have Been Developed Through Investigation of the Resignation in lieu of termination**

Finally, for the same reasons stated above, Mr. Jones cannot allege that the new claims would have been developed through an investigation of the claim contained in Mr. Jones' Charge. The Charge focused on a discrete act, his termination in May of 2021, resulting from his violation of the Department's Code of Conduct. A reasonable investigation of this Charge would not reveal pre-May 2021 conduct, nor would it reveal conduct related to BLM, racial tensions in the Salisbury community, communications with other police departments, or property room and time records violations. These allegations are wholly unrelated to Mr. Jones violation of the Code of Conduct and would not be revealed by a reasonable investigation of that violation. *Gainers v. Baltimore Police Dep't*, Civil No. ELH-21-1211, 2022 U.S. Dist. LEXIS 83357, * 45-46 (D. Md. 2022) (hostile work environment claim in judicial complaint alleging pervasive abuse does not reasonably follow from EEOC charge alleging only disparate treatment resulting from denial of secondary employment during a limited period of time). The new claims should be dismissed with prejudice.

IV.   THE CITY'S DECISION TO ALLOW MR. JONES TO RESIGN IN LIEU OF TERMINATION WAS NOT BASED ON HIS RACE

Chief Duncan and Salisbury are entitled to summary judgment on the remaining claim contained in the Complaint because they had a legitimate, non-discriminatory reason for requesting Mr. Jones resignation in lieu of termination; Mr. Jones had violated the Department's Code of Conduct and exposed Salisbury to potential civil liability.

### A.   There is No Evidence Supporting Mr. Jones' Claim of Racial Discrimination.

To prevail on his discrimination claim, Mr. Jones must prove intentional discrimination -- not simply that he is an African American and his employment was terminated, but that his employment was terminated *because* he is an African American.  *See United States Postal Service v. Aikens*, 460 U.S. 711, 715 (1983); *see also International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335-36 n.15 (1977) ("Proof of discriminatory motive is critical"); *Holder v. City of Raleigh*, 867 F.2d 823 (4th Cir. 1989) (plaintiff must ultimately be able to prove that employment action was taken *because* of his race).  As the Supreme Court has stated, "[t]he ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 153 (2000).

This Court has explained that, in Title VII cases, "discrimination may be proven by one of two methods: (1) 'direct or indirect' evidence of discrimination, under 'ordinary principles of proof,' *Burns v. AAF–McQuay, Inc.,* 96 F.3d 728, 731 (4th Cir. 1996)…; or (2) the burden-shifting approach first articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973)."  *Weathersbee v. Balt. City Fire Dept.,* 970 F. Supp. 2d 418, 430 (D. Md. 2013).  Mr. Jones cannot satisfy either method.

**1. There Is No Direct Evidence of Racial Discrimination.**

Under the "ordinary method," the plaintiff must "produce direct evidence of a stated purpose to discriminate and/or indirect evidence of sufficient probative force to reflect a genuine issue of material fact." *Weathersbee,* 970 F. Supp. 2d at 430 (internal marks omitted).   Direct evidence is evidence of conduct or statements that reflect a discriminatory attitude and that bear directly on the employment decision. *Id.*   In this case, Mr. Jones has absolutely no evidence, direct or otherwise, to support his claims of racial discrimination, other than his own speculation that he was terminated because of his race.  The Complaint is devoid of any factual allegations indicating that his termination was the result of his race.  The Complaint only claims that the Department was uncomfortable with his race-related concerns.  ECF 1 at ¶¶ 39 & 40.  This is not direct evidence of racial discrimination motivating an adverse job action.  This is merely Mr. Jones' own personal speculation that his race was, and could be, the only explanation for his termination.  He offered no evidence of any overt conduct or statements that his supervisors acted with racial animus.  Accordingly, Mr. Jones' claims do not survive based on the "ordinary proof" method of establishing discrimination. *See Weathersbee*, 970 F. Supp. 2d at 431 (no direct evidence of discrimination where could not point to any evidence of explicit racial motivation for his termination).

**2. Mr. Jones Cannot Satisfy the *McDonnel Douglas* Burden Shifting Method of Establishing Evidence of Discrimination.**

Because Mr. Jones has no direct evidence of race discrimination, he must establish his claim of discrimination according to the three-step, burden-shifting method as set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Weathersbee,* 970 F. Supp. 2nd at 431.  Under the *McDonnell Douglas* framework, Mr. Jones must first establish a *prima facie* claim of race discrimination. *See id.*  If he is successful, the burden of production, but not proof, shifts

to the Defendants to articulate a "legitimate, nondiscriminatory" reason for his termination.  *Id.* at 431-32.  Once the Defendants articulate such a reason, the presumption of discrimination created by the *prima facie* claim is rebutted and "drops out of the picture." *Id.* at 432. The burden then reverts to Mr. Jones to prove that the Defendant's articulated reason is pretextual and discrimination was the true reason for his termination.  *McDonnell Douglas*, 411 U.S. at 804.  Put simply, "it is not enough . . . to disbelieve the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000).

As explained below, Mr. Jones cannot satisfy even the threshold requirement of establishing a *prima facie* claim of race discrimination.  Even assuming, *arguendo*, that he could, however, the Defendants are still entitled to summary judgment because they have articulated a legitimate, nondiscriminatory reason for the decision to terminate Mr. Jones' employment and he has no evidence to demonstrate that such reason is merely pretext for intentional race discrimination.

To establish a *prima facie* claim of race discrimination, Mr. Jones must show that: (1) he belongs to a protected class; (2) he suffered an adverse employment action; (3) he was performing his job duties at a level that met Salisbury's legitimate expectations at the time of the adverse employment action; and (4) similarly situated employees not in his protected class were treated more favorably.  *See Holland v. Washington Homes, Inc.*, 487 F.3d 208, 214 (4th Cir. 2007); *Baqir v. Principi*, 434 F.3d 733, 742 (4th Cir. 2006).  Mr. Jones cannot establish a *prima facie* claim because he cannot show that he was meeting the Defendants' legitimate expectations at the time of his termination in May 2021 and similarly situated employees outside his protected class were treated more favorably.

### a.   Mr. Jones Did Not Meet Defendants' Legitimate Job Expectations.

"[T]he *prima facie* case requires the employee to demonstrate that he was qualified in the sense that he was doing his job well enough *to rule out the possibility* that he was fired for inadequate job performance, absolute or relative." *Warch v. Ohio Casualty Insurance Co.*, 435 F.3d 510, 515 (4th Cir. 2006) (emphasis added).   As chronicled above, the evidence in this case shows that Mr. Jones was *not* meeting Defendants' legitimate job expectations.   Mr. Jones admitted that he took a picture of the woman because he thought it was a "joke."   Ex. 4, Jones Transcript, pp. 16:12-22 & 17:10-18:14.   The City determined that Mr. Jones' actions violated the Code of Conduct and put the City at risk.   Ex. 3, Koerner Aff., at ¶ 13.   His admitted violation of the Code of Conduct proves that he was not meeting the Defendants' legitimate job expectations.

### b.   Mr. Jones Was Not Treated Dissimilarly From a Similarly Situated Co-Worker.

Mr. Jones' claim also fails because he has not identified a valid comparator who was treated differently.   "'Where a plaintiff attempts to rely on comparator evidence to establish circumstances giving rise to an inference of unlawful discrimination,' the plaintiff must demonstrate at trial that the comparator is similarly situated in all relevant respects." *Ryan v. Wolf*, Civil No. ELH-19-1968, 2021 U.S. Dist. LEXIS 22759, *39, (D. Md. 2021) (quoting *Swaso v. Onslow Cty. Bd. Of Educ.*, 698 F. App'x 745, 748 (4th Cir. 2017).   To establish an appropriate comparator, "the plaintiff must produce evidence that the plaintiff and the comparator 'dealt with the same supervisor, [were] subject to the same standards and  . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Haywood v. Locke,* 387 F. App'x 355, 359 (2010) (quoting *Mitchell v. Toldeo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992); *Spencer v. Virginia State Univ.*, 919 F.3d 199, 207-08 (4th Cir. 2019), as amended (Mar. 26, 2019), *cert. denied*, 140 S. Ct. 381 (2019) ("courts consider whether the

16

employees (i) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications-provided the employer considered these latter factors in making the personnel decision."). The comparison "will never involve precisely the same set of work-related offenses occurring over the same period of time and under the same set of circumstances." *Haynes v.* , 922 F.3d 219, 223-24 (4th Cir. 2019). Accordingly, "[i]f a plaintiff wishes to prove that a defendant's legitimate, non-discriminatory explanation is pretext by pointing to other employees who were treated differently,'[t]he similarity between comparators . . . must be clearly established in order to be meaningful.'" *Swaso*, 698 F. App'x at 748.

Further, the "similarity between comparators and the seriousness of their respective offenses must be clearly established in order to be meaningful." *Lightner v. City of Wilmington*, 545 F.3d 260, 265 (4th Cir. 2008). "Thus, a complaint's conclusory assertions that the plaintiff and a co-worker are on equal footing is insufficient to nudge a discrimination claim across the line from conceivable to plausible." *Scott v. Lori*, Civil No. ELH-19-2014, 2020 U.S. Dist. LEXIS 119750, *49 (D. Md. 2020); "Where, as in this case, a plaintiff bases his allegations completely upon a comparison to an employee from a non-protected class, the validity of his *prima face* case depends upon whether that comparator is indeed similarly situated" *Wojtkowski v. Raimondo*, Case No. GJH-17-2399, 2021 U.S. Dist. LEXIS 97862, *24 (D. Md. 2021).

Here, Mr. Jones has selected sworn Salisbury Police Officers as his comparators despite the fact that he was a Police Communications Officer and not a sworn police officer. Consequently, Mr. Jones and his chosen comparators have different responsibilities, qualifications, and training. Ex. 3, Koerner Aff., ¶ 16. For example, the sworn officers are all graduates of the

police training academy and complete annual training related to their duties as sworn officers.  Mr. Jones has not completed either of these qualifications.

Even if the identified police officers were valid comparators, Mr. Jones' *prima facie* claim fails because there is no evidence, other than his own personal assessment, that he was treated more severely than a similarly situated co-worker.  First, Mr. Jones was disciplined for violating Department's Code of Conduct, not the Department's social media policy.  Ex. 3, Koerner Aff., ¶ 13.  Second, until the filing of Mr. Jones' Complaint, Departmental Command Staff had no knowledge of the social media postings included in the Complaint.  *Id*. at ¶ 15.  Importantly, those posts appear to be from the other officers' private social media accounts and are unrelated to their work with the Department.  *Id*.  Therefore, they have a First Amendment right to post their beliefs as long as they do not impact the Department's ability to serve the public.  *Id*.  In contrast, Mr. Jones' posting directly related to his work as a Police Communications Officer and the Department determined that it could undermine the public's trust in the Department if the incident were to become public.

Further, Mr. Jones' claim that Luke Bohtling was offered his job back after violating Departmental policy is misleading.[2]  Mr. Bohtling was initially employed by the City as a Communications Officer.  *Id*. at ¶ 18.  He eventually resigned that position and enrolled in the police training academy.  *Id*.  While attending the academy, his instructors determined that he lacked the maturity to serve as a licensed police officer and he was dismissed from the academy. *Id*. at ¶ 18.  After his dismissal, he was rehired by the Department because he had previously demonstrated the required maturity to serve as a Communications Officer, despite his subsequent

---

2. This claim was set forth in Mr. Jones' Charge of Discrimination, but not included in the Complaint in this matter.

failure to qualify as a police officer.  *Id.*  In contrast, Mr. Jones proved himself lacking the maturity to serve as a Communications Officer and was justifiably asked to resign.

Finally, the only other known circumstance where a communications officer, or a police officer for that matter, violated the Department's Code of Conduct by inappropriately disseminating a picture took place in 2008 when a communications officer took a picture of a picture of a murder victim that was stored in the Department's computer system and forwarded it via his cell phone.  *Id.* at ¶ 17.  That officer was also terminated.  *Id.*

      **c. Because the Defendants Have Articulated Legitimate, Non-Discriminatory Reasons for Mr. Jones' Termination, Summary Judgment Must Be Granted Because There is No Direct Evidence of Discrimination.**

Even assuming, *arguendo*, that Mr. Jones has produced sufficient evidence to establish a *prima facie* case, the Defendants have provided a legitimate and nondiscriminatory reason for terminating his employment – he violated the Code of Conduct and exposed Salisbury to potential liability.  Therefore, the presumption of discrimination is rebutted and, in the third stage of the *McDonnell Douglas* analysis, the burden of production shifts back to Mr. Jones to offer evidence that the Defendants' reasons for terminating him were pretextual, and "that the actual basis for its employment decision was the plaintiff's race."  *See Weathersbee,* 970 F. Supp. 2d at 433-34.  As described above in the "direct evidence" discussion, there is absolutely no evidence that would allow a jury to "reasonably find for the plaintiff" that the Defendants intentionally discriminated against him on the basis of race.  *Id.*  All Mr. Jones alleges is that Chief Duncan and the Department were uncomfortable with his discussion of racial issues.  Such conclusory assumptions are not evidence.  Accordingly, this Court should grant summary judgment on Plaintiff's racial discrimination claim.

**CONCLUSION**

For the reasons stated above, Barbara Duncan and the City of Salisbury, Maryland request that the Court dismiss Mr. Jones' Complaint with prejudice and enter judgment in their favor.

Respectfully submitted,

/s/ Raymond R. Mulera

_____

Raymond R. Mulera
Federal Bar # 09454
rmulera@lgit.org
7225 Parkway Drive
Hanover, Maryland  21076
Office (443) 451-1700
Facsimile (443) 561-1701

Counsel for Barbara Duncan & the City of Salisbury, Maryland

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on the 19th day of December 2022, a copy of the foregoing Motion to Dismiss or, in the Alternative for Summary Judgment, Memorandum in Support, and Proposed Order were filed and served electronically via ECF with notice to all counsel of record.

/s/ Raymond R. Mulera

_____

Raymond R. Mulera.