Exhibit 3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| KAMEL B. JONES, JR. | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | **CASE NO. 1:22-CV-02628-JRR** |
| | ) | |
| THE CITY OF SALISBURY, MD & | ) | |
| BARBARA DUNCAN | ) | |
| | ) | |
| Defendant | ) | |

### AFFIDAVIT OF CAPTAIN RYAN KOERNER

COMES NOW, the Affiant Capt. Ryan Koerner and hereby swears and affirms upon personal knowledge and under penalty of perjury as follows:

1.      My name is Ryan Koerner.  I am over eighteen years of age and am competent to testify.

2.      I am currently employed as a Police Captain for the City of Salisbury ("Salisbury"), Maryland Police Department (the "Department") and have been employed by Salisbury since December of 2003.

3.      As a Captain with the Department, my responsibilities include the investigation of complaints of misconduct and violations of the standards of conduct by Department Officers. These investigations are assigned to me and other Command Staff by Chief of Police Barbara Duncan.

4.      On April 29, 2021, Chief Duncan directed me to investigate a complaint against Police Communications Officer Kamel Jones for violating the Department's standards of conduct. Salisbury hired Mr. Jones as a Police Communications Officer ("Communications Officer") on October 16, 2017. ECF 1. As a Communications Officer, Mr. Jones was responsible for answering

emergency and non-emergency calls and gathering pertinent information and dispatching the appropriate assistance.   Mr. Jones was also responsible for promptly providing emergency responders with information they needed to respond to calls, including information related to motor vehicles, driver's licenses, and criminal history.   Finally, Mr. Jones was responsible for performing status checks on first responders.   Mr. Jones was never employed as a sworn police officer by Salisbury.

5.     Mr. Jones was accused of using his cell phone to photograph a partially nude woman that was apparently having a mental health crises in the Department building's lobby.   In conducting my investigation, I conducted an in-person interview with Mr. Jones and received written statements from Department Police Officers Lt. Tyler, Sgt. Thompsen, Sgt. Hitty, and Officer Rodriguez.   I also spoke with Cpl. Foy on the telephone.

6.     My investigation revealed that on April 28, 2021, at approximately 2:43 p.m. a partially nude female entered the lobby of the Department.   She was wearing a trash bag that covered her chest and was nude from her chest down.   After entering the lobby, the woman began to throw chairs around the lobby and, ultimately, passed out on the floor.

7.     At the time the woman entered the lobby, Mr. Jones was working in the Department's communications room.   The room has a video monitor that displays the live video feed from the Department's on-site video monitoring system.   The video feed from the security camera in the lobby is displayed on the communications room video monitor.

8.     Mr. Jones used his cell phone to take a picture of the communications room video monitor while it showed the woman lying mostly nude on the floor.   Next, Mr. Jones used the Snapchat application on his cell phone to forward the picture to Department Officers Rodriguez, Ross, Robison, Strawser, Dean and Eskridge.   He also sent the picture by text message to Cpl. Foy.

2

9.      Officer Rodriguez immediately notified Sgt. Hitty that he had received the picture. Sgt Hitty reported the incident to Corporal Foy and Lieutenant Tyler.

10.      Cpl. Foy notified Sgt. Thomsen that he received a copy of the picture via text message from Mr. Jones. Sgt. Thomsen ordered Mr. Jones to delete the picture from his cell phone and reported the incident to Lt. Tyler.

11.      Shortly after the picture was disseminated, Captain Drewer met with Mr. Jones and suspended him from duty. All officers, except Cpl. Foy, were directed to delete the picture from their phones. Cpl. Foy was subsequently directed to delete the picture from his cell phone after the picture was archived.

12.      On May 3, 2021, I interviewed Mr. Jones with regard to the complaint. Mr. Jones confirmed that he was on duty on April 28, 2021, and that he received a call from the Maryland State Police warning that a partially nude woman was about to enter the Department lobby. Mr. Jones also stated that he was the first to observe the woman and that he saw her through the lobby window and on the video monitor. He admitted that he took a picture of the woman as she was lying on the floor, apparently unconscious, and that he forwarded the picture via Snapchat and text message. When asked why he took the picture, Mr. Jones told me that he "thought it was a joke."

13.      After completing my investigation, I determined that Mr. Jones had taken the picture of a partially nude woman who had passed out in the Department lobby and forwarded it to other Department Officers. His actions violated Section 602 subsection (5) of the Department's Code of Conduct as they undermined the good order, efficiency, and discipline of the Department. I also found that his actions exposed the Department to potential civil liability because his dissemination of the picture created the possibility that picture could end up in the public domain. Finally, I found Mr. Jones' explanation that he intended the picture to be humorous demonstrated

3

that he lacked the compassion and maturity necessary to perform his job. His actions were not in the best interests of the Department or the woman in the picture.

14.     Mr. Jones met with Chief Duncan and was offered the opportunity to resign his position in lieu of termination. He chose to resign.

15.     I have also reviewed Mr. Jones' allegations in paragraph 27 of the Complaint that other officers violated the Departments social media policy and were not similarly disciplined. His allegations are not true for several reasons. First, Mr. Jones was disciplined for violating the Department's Code of Conduct, not the Department's social media policy. Second, until the filing of Mr. Jones' Complaint, the Department's Command Staff had no knowledge of the social media postings included in the Complaint. Importantly, those posts appear to be from the other officers' private social media accounts and are unrelated to their work with the Department. Therefore, I determined that they have a First Amendment right to post their beliefs as long as they do not impact the Department's ability to serve the public. In contrast, Mr. Jones' posting directly related to his work as a Communications Officer and could undermine the public's trust in the Department if the incident were to become public.

16.     The police officers identified as comparators by Mr. Jones in the Complaint are sworn police officers with different duties and responsibilities than Mr. Jones. They are responsible for enforcing the law and have direct face-to-face contact with citizens every day. They also have different qualifications to work as sworn police officers. For example, they have all graduated from the police training academy and are required to complete annual training on issues related to their work.

17.     The only other instance where an officer posted a picture relating to his work occurred approximately 14 years ago. In 2008 or 2009, a communications officer took a

4

photograph of a photograph of a homicide victim and forwarded the photograph to others. That officer was also terminated.

18.     Finally, Mr. Jones' allegation that Officer Bohtling was offered his job back after violating the Department Policy is misleading. Mr. Bohtling was initially hired as a Police Communications Officer. After service as a Communications Officer, he entered the police training academy with the hopes of becoming a police officer. While in the academy, his instructors expressed their concerns that he lacked the maturity to serve as a police officer. Consequently, the Department terminated his position as a police recruit and allowed him to return to his former position as a Police Communications Officer, where he had previously demonstrated his qualifications for the position.

*I swear and affirm under penalty of perjury that the foregoing statements are true and accurate to*

*the best of my personal knowledge.*

12/01/22
_____
Date

_____
Capt. Ryan Koerner