UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|   |   |
|---|---|
| KAMEL B. JONES, JR., <br><br> Plaintiff, <br><br> v. <br><br> THE CITY OF SALISBURY, MD <br> & BARBARA DUNCAN, <br><br> Defendants. | Civil No.: 1:22-cv-02628-JRR |

### **MEMORANDUM OPINION**

This matter comes before the court on Defendants Barbara Duncan and the City of Salisbury, Maryland's (the "City") Motion to Dismiss Plaintiff's Amended Complaint or, in the alternative, for Summary Judgment. (ECF No. 18; the "Motion.") The parties' submissions have been reviewed and no hearing is necessary. Local Rule 105.6 (D. Md. 2023). For the reasons that follow, by accompanying order, the Motion will be denied as to Counts I and II and granted as to Count III.

### **BACKGROUND**[1]

The action arises out of Plaintiff Kamel B. Jones' alleged forced resignation with the Salisbury Police Department (the "SPD"). According to Plaintiff, he was discriminated and retaliated against because of his race as an African American. (ECF No. 15, ¶ 1.)

On October 16, 2017, Plaintiff began working as a Police Communications Officer for the SPD. *Id.* ¶ 10. On June 25, 2018, Plaintiff received his first Employee Performance Appraisal

---

[1] For purposes of this memorandum, the court accepts as true the well-pled facts set forth in the Amended Complaint (ECF No. 15).

earning an overall rating of 3 out of 4. *Id.* ¶ 12. On June 3, 2019, Plaintiff received his second Employee Performance Appraisal earning an overall rating of 3.4 out of 4. *Id.* ¶ 14.

On April 28, 2021, Plaintiff was working in dispatch when a woman entered the police department lobby displaying unusual behavior, including throwing chairs. The woman lied down on the lobby floor. Plaintiff then took a photo of the woman and disseminated the photograph to other officers via the social media platform called Snapchat. *Id.* ¶ 30. An officer who received the photograph reported it to his supervisor who then reported it to Plaintiff's supervisor. *Id.* ¶ 31. Plaintiff was immediately placed on paid suspension pending an investigation pursuant to "SPD Directives #702 pertaining to Social media use." *Id.* On May 12, 2021, Plaintiff met with Defendant Duncan who informed him that she made the decision to terminate him but would allow him to resign. *Id.* ¶ 33. Plaintiff ultimately signed a resignation letter and ended his employment with SPD. *Id.*

On February 14, 2022, Plaintiff filed a Charge of Discrimination (the "Charge") with the Equal Employment Opportunity Commission (the "EEOC") for discrimination based on race. (ECF No. 18-3 at 2.)[2] In his Charge, Plaintiff alleged that he was aware that "similarly situated

---

[2] Plaintiff did not attach a copy of his Charge or Right to Sue Letter to the Amended Complaint, but Defendants attach copies of both documents to their Motion. In ruling on a motion to dismiss pursuant to Rule 12(b)(6), a court usually does not consider evidence outside of the complaint. A court may consider documents attached to a motion to dismiss if the document is "integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity." *Am. Chiropractic Ass'n, Inc. v. Trigon Healthcare Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (quoting *Phillips v. LCI Int'l Inc.,* 190 F.3d 609, 618 (4th Cir. 1999)). "An integral document is a document that by its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC,* 794 F. Supp. 2d. 602, 611 (D. Md. 2011) (quoting *Walker v. S.W.I.F.T. SCRL*, 517 F. Supp. 2d 801, 806 (E.D. Va. 2007)). "In addition to integral and authentic exhibits, on a 12(b)(6) motion the court 'may properly take judicial notice of matters of public record.'" *Id.* (quoting *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)). The court may consider the Charge and Right to Sue letter attached to Defendants' Motion because the documents' very existence allow Plaintiff to file the instant litigation and Plaintiff does not dispute the authenticity of the documents. Further, the information in the EEOC Charge is essential in determining the scope of the claims Plaintiff is entitled to bring before this court under Title VII. The documents are integral and will be considered in resolving Defendants' Motion. Additionally, the court may take judicial notice of the documents because the Charge and resulting Right to Sue letter are matters of public record.

white officers" were not forced to resign or disciplined for similar infractions to that resulting in his resignation. *Id.* at 3. Plaintiff indicated that he believed he "was discriminated against because of [his] race (black) with respect to constructive discharge, in violation of Title VII of the Civil Rights Act of 1964, as amended;" and claimed that the discrimination took place between May 1, and May 31, 2021. *Id.* On July 15, 2022, the EEOC issued a Right to Sue Notice to Plaintiff. (ECF Nos. 15, ¶ 2 and 18-4.)

Plaintiff filed his initial complaint on October 12, 2022. On January 2, 2023, Plaintiff filed his First Amended Complaint, which contains three counts: Title VII of the Civil Rights Act of 1964 ("Title VII") (Employment Discrimination Based on Race) against the City only (Count I); Violation of Section 1983 (Employment Discrimination Based on Race Under Section 1981) against both Defendants (Count II); and Violation of Section 1983 (Retaliation Under Section 1981) against both Defendants.

## LEGAL STANDARDS

### I. FEDERAL RULE OF CIVIL PROCEDURE 12(d)

Defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment under Rule 56. "A motion with this caption implicates the court's discretion under Fed. R. Civ. P. 12(d)." *Snyder v. Md. Dep't of Transp.*, No. CCB-21-930, 2022 WL 980395, at *4 (D. Md. Mar. 31, 2022). Federal Rule of Civil Procedure 12(d) provides, "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." FED. R. CIV. P. 12(d). "Pursuant to Rule 12(d), the Court has discretion to determine whether to accept evidence outside the pleadings, and thus convert a Rule 12(b)(6) motion to a Rule 56 motion." *Coleman v. Calvert Cnty.*, No. GJH-15-920, 2016 U.S. Dist. LEXIS 130420, at *8 (D.

3

Md. Sept. 22, 2016) (citations omitted).  At this stage of the litigation, the court declines to convert Defendants' Motion into one for summary judgment and will not consider any attachments to Defendants' Motion and Reply except for those discussed *supra* at n.2.

## II. FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

A Rule 12(b)(6) motion "tests the legal sufficiency of a complaint.  It does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)).  Accordingly, a "Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards*, 178 F.3d at 244 (*citing Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)).

"While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).  "A complaint that provides no more than 'labels and conclusions,' or 'formulaic recitation of the elements of a cause of action,' is insufficient." *Bourgeois v. Live Nation Ent., Inc.*, 3 F. Supp. 3d 423, 434 (D. Md. 2014) (quoting *Twombly*, 550 U.S. at 555).  "The [c]ourt must be able to deduce 'more than the mere possibility of misconduct'; the facts of the complaint, accepted as true, must demonstrate that the plaintiff is entitled to relief." *Evans v. 7520 Surratts Rd. Operations, LLC*, No. PX-21-1637, 2021 U.S. Dist.

LEXIS 221041, at *4 (D. Md. Nov. 16, 2021) (quoting *Ruffin v. Lockheed Martin Corp.*, 126 F. Supp. 3d 521, 526 (D. Md. 2015)).

## ANALYSIS

### I. TITLE VII – RACE DISCRIMINATION

#### A. Exhaustion of Remedies

Defendants argue that Plaintiff's "claims" set forth in Paragraphs 15 through 29 and 39 through 46 of the Complaint were not set forth in Plaintiff's Charge, and, therefore, Plaintiff has not exhausted his administrative remedies as required by Title VII. (ECF No. 18-1 at 10.) Plaintiff counters that the allegations set forth in Paragraphs 15 through 29 and 39 through 46 of the Complaint provide necessary background and context for his Section 1981 claims in Counts II and III of the Complaint, and do not serve as the basis for liability under his Title VII claim set forth in Count I. (ECF No. 20-1 at 7.)

At the outset, the court notes that Defendants' characterization of Paragraphs 15 through 29 and 39 through 46 as a hostile work environment claim under Title VII (ECF No. 18-1 at 11) is not supported by the allegations in the Complaint. Plaintiff brings a single Title VII claim under Count I of the Complaint for racial discrimination. His remaining claims are brought pursuant to Section 1981. Plaintiff is not required to exhaust his administrative remedies for his Section 1981 claims. *Sewell v. Strayer Univ.* 956 F. Supp. 2d 658, 673 (D. Md. 2013) (noting "[s]ection 1981 claims are not subject to the same exhaustion and timeliness requirements as those asserted pursuant to Title VII") (citing *White v. BFI Waste Servs., LLC*, 375 F.3d 288, 291-92 (4th Cir. 2004)). Plaintiff concedes that, should the court construe the allegations in Paragraphs 15 through 29 and 39 through 46 as Defendants' have (a Title VII hostile work environment claim), said paragraphs are not a basis for liability under Count I. The court construes the Complaint to set

5

forth one count under Title VII for race-based discrimination; the court will not consider allegations that exceed the scope of Plaintiff's Charge in assessing whether Plaintiff's Title VII claim survives dismissal. *See Fin. Fair v. Gaston County Family YMCA,* 2012 U.S. Dist. LEXIS 102493 *11 (W.D.N.C. Jun. 12, 2012) ("[i]t is well settled that the scope of Plaintiff's EEOC charge defines the scope of any ensuing lawsuit") (citing *Bryant v. Bell Atl. Md., Inc.,* 288 F.3d 124, 132 (4th Cir. 2002)); *see also Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996) (holding that "[o]nly those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit.")

**B.     Count I (Violation of Title VII – Race Discrimination)**

Title VII prohibits an employer, *inter alia*, from discriminating against "any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." *Brennan v. Deluxe Corp.,* 361 F. Supp. 3d 494, 504 (D. Md. 2019) (quoting 42 U.S.C. §2000e-2(a)(1)). "At the motion to dismiss stage, "[i]t has long been the rule that 'an employment discrimination plaintiff need not plead a prima facie case of discrimination under the evidentiary framework set forth in *McDonnell Douglas Corp.*"[3] *Holloway v. Md.*, 32 F.4th 293, 298 (4th Cir. 1973). "Instead, a Title VII plaintiff is

---

[3] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To establish a *prima facie* Title VII racial discrimination claim under the *McDonnell Douglas* burden shifting framework a plaintiff must demonstrate "(1) the plaintiff is a member of a protected class; (2) the plaintiff has performed satisfactorily on the job; (3) the plaintiff suffered an adverse employment action; and (4) the treatment plaintiff was subjected to differed from similarly situated employees outside the protected class." *Brennan v. Deluxe Corp.,* 361 F. Supp. 494, 506-507 (D. Md. 2019).

After the plaintiff establishes a prima facie case of racial discrimination, the defendant must proffer an explanation for the actions taken. *McDonnell Douglas Corp., v. Green,* 411 U.S. 792, 802 (1973). Once a defendant articulates legitimate reasons for its actions, the burden shifts back to the plaintiff, who is required to prove that the defendant's proffered justification is merely a pretext, and that the challenged actions were taken because of the plaintiff's race. *Id.* at 804-805.

'required to allege facts to satisfy the elements of a cause of action created by that statute.'" *Bing v. Brivo Systems, LLC*, 959 F.3d 605, 616 (4th Cir. 2020) (quoting *McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015)).

"In employment discrimination cases, a plaintiff must plead that (1) [his] employer took an adverse employment action against [him], (2) because of [his] protected status." *Brooks*, 2021 WL 4339194, at *12; *see McCleary-Evans*, 780 F.3d at 585 (explaining that the plaintiff is "required to allege facts to satisfy the elements of a cause of action created by that statute"). "[A] complaint must contain '[f]actual allegations [sufficient] to raise a right to relief above the speculative level.'" *McCleary-Evans*, 780 F.3d at 585 (quoting *Twombly*, 550 U.S. at 555). "To allege that an employer acted because of an employee's protected status, there must be some connective thread between the alleged mistreatment and the protected status." *Brooks*, 2021 WL 4339194, at *12 (internal quotation marks omitted).

Defendants argue that, with respect to Plaintiff's claims for racial discrimination under Title VII, Count I must be dismissed because Plaintiff's actions on April 28, 2021, "provided a legitimate, non-discriminatory reason for his termination." (ECF No. 18-1 at 14.)

The Complaint alleges:

> Officer Jones, who is Black, is a member of a protected class.
>
> Officer Jones suffered an adverse employment action when he was forced to resign from employment at the SPD.
>
> ∗∗∗
>
> Officer Jones was treated differently than similarly situated employees at the SPD who are not Black and are outside his protected class, including three dispatchers (white females) referred to in Paragraphs 38 and 41. TM[4] and Officer Jones were all

---

[4] Plaintiff alleges TM is a white female dispatcher who repeatedly failed to respond properly to "hits to warrants" and mishandled high-risk calls for service but was never disciplined. (ECF No. 15, ¶ 41.) Plaintiff alleges CS is a white female dispatcher who videotaped an altercation between citizens in the lobby of the police station and shared the video with co-workers, but was not disciplined under SPD's social media policy or code of conduct. *Id.* ¶ 38.

7

>employed less than 5 years as dispatchers with SPD while CS was employed less than 1 year at the time of incidents at issue, performing the same duties, under the same supervisors, and subject to the same rules, including the Social Media Policy, Code of Conduct, and disciplinary matrix. CS engaged in similar conduct to Officer Jones while TM engaged in more egregious conduct, but CS and TM were not disciplined by Defendants.
>
>\*\*\*
>
>There are numerous examples of other SPD officers and dispatchers (all white) who broke major rules (and in some cases, laws) and were not disciplined or received a much less severe discipline than Officer Jones, including for violations set forth in Paragraph 42. For example, in November 2021 an officer who was caught falsifying time records for payment was removed from the police academy but re-hired as a dispatcher even though intentional misrepresentation and lying violations are Category E violations under SPD's disciplinary matrix. Numerous SPD supervisors (all white) have recently been caught falsifying documentation in the SPD property room. These employees have been demoted one rank but remain employed.

(ECF No. 15, ¶¶ 49-52 and 54.)

Here, Plaintiff has satisfied the relaxed pleading standard for Title VII racial discrimination claims. *See Comcast Corp. v. Nat'l Ass'n of African American-Owned* Media, 140 S. Ct. 1009 (identifying that "a Title VII plaintiff doesn't have to prove but-for causation; instead, it's enough to show that discrimination was a motivating factor in the defendant's decision") (citing *Price Waterhouse v. Hopkins*, 490 U. S. 228 (1989)). Plaintiff alleges that he is a black male who was forced to resign pursuant to SPD's social media policy. (ECF No. 15, ¶¶ 31-33.) Plaintiff alleges that being forced to resign for violating Defendants' social media policy was a more severe consequence than those imposed upon similarly situated white employees who committed similar or more severe violations than that of Plaintiff. *Id.* ¶¶ 38-42 and 44. "To support an inference of discrimination a plaintiff may identify a similarly situated comparator who was treated differently, but [he] is not required to do so." *Khazanie v. Univ. of N.C. at Chapel Hill*, 2021 U.S. Dist. LEXIS

217431 *12 (M.D.N.C. Nov. 10, 2021) (citing *Bryant v. Aiken Reg'l Med. Ctrs.*, Inc., 333 F.3d 536, 545-46 (4th Cir. 2003)). Even if Plaintiff relies on comparators, "[t]he similarly situated analysis typically occurs in the context of establishing a prima facie case of discrimination, not at the 12(b)(6) stage." *Woods v. City of Greensboro*, 855 F.3d 639, 650-51 (4th Cir. 2017) (recognizing that "differences exist between the facts alleged in the case at bar and each of the comparative exemplars that [the plaintiff] offers" but "evidentiary determinations regarding whether the comparators' features are sufficiently similar to constitute appropriate comparisons generally should not be made at this point").

Plaintiff's allegations that he is a member of a protected class coupled with his allegations that he was forced to resign – while other, white employees were not disciplined, terminated, or compelled to resign for similar behavior – moves Plaintiff's claim "across the line from conceivable to plausible" as required at the motion to dismiss stage. *Bell Atl. Corp. v Twombly,* 550 U.S. 544, 570 (2007). The Motion as to Count I will be denied.

Defendants' argument that Plaintiff's forced resignation was based on a legitimate non-discriminatory reason relates to the *McDonnell Douglas* burden shifting framework. "However, the *McDonnell Douglas* framework 'is an evidentiary standard, not a pleading requirement.' As such, it does not bear on the Court's analysis at this stage." *Spencer v. Va. State Univ.*, 224 F. Supp. 3dd 449, 458 (E.D. Va. 2016) (quoting *Swierkiewicz v. Sorema NA.*, 534 U.S. 506, 510 (2002)).

## II. SECTION 1981 – RACE DISCRIMINATION

Section 1981 provides that "[a]ll persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). Although the statute does not mention "race," the Supreme Court has interpreted it "to forbid all racial discrimination

in the making of private as well as public contracts." *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 609 (1987) (internal quotation marks omitted). That prohibition extends to "discrimination in private employment on the basis of race." *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 460 (1975). Therefore, a person who experiences intentional race discrimination in private employment may pursue a "federal remedy" under Section 1981. *Id.* To state a Section 1981 race-discrimination claim, a plaintiff must allege that make it plausible "that, but for race, he would not have suffered the loss of a legally protected right" under the statute. *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020).

Defendants raise the same arguments in favor of dismissal of Count I to support dismissal of Count II for race-based discrimination under Section 1981 – that Defendants had a legitimate, non-discriminatory reason for forcing Plaintiff to resign. (ECF No. 18-1 at 14.) Stated differently, Defendants' arguments attack Plaintiff's ability to plead, or ultimately prove, causation. In the past, many courts analyzed Title VII claims and Section 1981 racial discrimination claims under the same pleading standard. In 2020, however, the Supreme Court clarified in *Comcast* that Section 1981 claims for racial discrimination are held to a more stringent pleading standard than racial discrimination claims brought pursuant to Title VII. *Id.*

Justice Gorsuch, delivering the opinion of the *Comcast* Court, began by identifying the legal principles regarding causation: "Few legal principles are better established than the rule requiring a plaintiff to establish causation. In the law of torts, this usually means a plaintiff must first plead and then prove that its injury would not have occurred 'but for' the defendant's unlawful conduct." *Id.* at 1013. Prior to *Comcast*, there were circuit disputes about whether Section 1981 racial discrimination claims were subject to a more relaxed causation pleading standard allowing a plaintiff to allege that race played "some role" in the defendant's decision-making process or

10

whether the more stringent "but for" causation pleading standard is required for Section 1981 claims.  The *Comcast* Court held:

> [T]aken collectively, clues from the statute's text, its history, and our precedent persuade us that §1981 follows the general rule.  Here, a plaintiff bears the burden of showing that race was a but-for cause of its injury. And, while the materials the plaintiff can rely on to show causation may change as a lawsuit progresses from filing to judgment, the burden itself remains constant.

*Id.* at 1014-15.

The *Comcast* Court engaged in a statutory interpretation analysis with respect to Section 1981 and concluded:

> This Court's precedents confirm all that the statute's language and history indicate. When it first inferred a private cause of action under §1981, this Court described it as "afford[ing] a federal remedy against discrimination . . . on the basis of race," language (again) strongly suggestive of a but-for causation standard. [*Johnson v. Railway Express Agency, Inc.*, 421 U.S., 421 459-460 (1975)] [emphasis removed]. Later, in *General Building Contractors Assn., Inc. v. Pennsylvania*, 458 U. S. 375, [] (1982), the Court explained that §1981 was "designed to eradicate blatant deprivations of civil rights," such as where "a private offeror refuse[d] to extend to [an African-American], . . . because he is [an African-American], the same opportunity to enter into contracts as he extends to white offerees." *Id.*, at 388 [] (emphasis deleted; internal quotation marks omitted). Once more, the Court spoke of §1981 using language—because of—often associated with but-for causation. [*Univ. of Tex. Southwestern Med. Ctr. v. Nassar,* 570 U. S., 338, 350 (2013)]. Nor did anything in these decisions even gesture toward the possibility that this rule of causation sometimes might be overlooked or modified in the early stages of a case.

*Id.* at 1016.

The *Comcast* Court addressed the plaintiff's argument that the less stringent "motivating factor" test applicable to Title VII claims should be applied to Section 1981 claims:

> The company asks us to draw on, and then innovate with, the "motivating factor" causation test found in Title VII of the Civil Rights Act of 1964. But a critical examination of Title VII's history reveals more than a few reasons to be wary of any invitation to

11

> import its motivating factor test into §1981.
>
> This Court first adopted Title VII's motivating factor test in *Price Waterhouse v. Hopkins*, 490 U. S. 228 [] (1989). There, a plurality and two Justices concurring in the judgment held that a Title VII plaintiff doesn't have to prove but-for causation; instead, it's enough to show that discrimination was a motivating factor in the defendant's decision. *Id.*, at 249-250 [] (plurality opinion)[.]
>
> But this arrangement didn't last long. Congress soon displaced *Price Waterhouse* in favor of its own version of the motivating factor test. In the Civil Rights Act of 1991, Congress provided that a Title VII plaintiff who shows that discrimination was even a motivating factor in the defendant's challenged employment decision is entitled to declaratory and injunctive relief. §107, 105 Stat. 1075. A defendant may still invoke lack of but-for causation as an affirmative defense, but only to stave off damages and reinstatement, not liability in general. 42 U. S. C. §§2000e-2(m), 2000e-5(g)(2)(B) . . . .
>
> While this is all well and good for understanding Title VII, it's hard to see what any of it might tell us about §1981.

140 S. Ct. 1009 at 1017.

> What's more, it's not as if Congress forgot about §1981 when it adopted the Civil Rights Act of 1991. At the same time that it added the motivating factor test to Title VII, Congress also amended §1981. *See* Civil Rights Act of 1991, §101, 105 Stat. 1072 (adding new subsections (b) and (c) to §1981). But nowhere in its amendments to §1981 did Congress so much as whisper about motivating factors. And where, as here, Congress has simultaneously chosen to amend one statute in one way and a second statute in another way, we normally assume the differences in language imply differences in meaning.

*Id.* at 1017-18 (citations omitted).

> All the traditional tools of statutory interpretation persuade us that §1981 follows the usual rules, not any exception. To prevail, a plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right.

*Id.* at 1019.

Here, Plaintiff has alleged that:

> Nevertheless, Defendants unlawfully disciplined Plaintiff because

12

> of his race, initially by suspending him from work on April 28, 2021 and then forcing him to resign or be terminated on May 12, 2021 for alleged violation of SPD's Social Media Policy and/or Code of Conduct.

(ECF No. 15, ¶ 61.)

> Officer Jones was treated differently than similarly situated employees at the SPD who are not Black and are outside his protected class, including three dispatchers (white females) referred to in Paragraphs 38 and 41. TM and Officer Jones were all employed less than 5 years as dispatchers with SPD while CS was employed less than 1 year at the time of incidents at issue, performing the same duties, under the same supervisors, and subject to the same rules, including the Social Media Policy, Code of Conduct, and disciplinary matrix. CS engaged in similar conduct to Officer Jones while TM engaged in more egregious conduct, but CS and TM were not disciplined by Defendants.

*Id*. ¶ 64.

> There are numerous examples of other SPD officers and dispatchers (all white) who broke major rules (and in some cases, laws) and were not disciplined or received a much less-severe discipline than Officer Jones, including for violations set forth in Paragraph 42. For example, in November 2021 an officer who was caught falsifying time records for payment was terminated from the police academy but re-hired as a dispatcher. Numerous SPD supervisors (all white) have recently been caught falsifying documentation in the SPD property room. These employees have been demoted one rank but remain employed by SPD.

*Id.* ¶ 66.

> Yet, despite issuance of written policies and procedures for SPD, Defendants turned the proverbial "blind eye" and refused to enforce such policies and procedures, including the social media policy and Code of Conduct, against white employees who engaged in misconduct. This inaction in the face of known violations of the policies by white employees constitute a custom or policy of deliberate indifference by Defendant, City of Salisbury.

*Id.* ¶ 69.

Here, Plaintiff has done more than present "bare conclusory allegation[s] that similarly

situated individuals were treated differently." *Acosta v. Ingerman & Horwitz, L.L.C.,* 2015 WL 795108 at *5 (D. Md. Feb. 24, 2015.)  Rather, Plaintiff has pled that other, white dispatchers who perform the same duties, report to the same supervisors, and are subject to the same policies were neither terminated nor forced to resign when they were found in violation of SPD's social media policy.  Specifically, Plaintiff alleges that similarly situated white employees found to have engaged in similar conduct for which Plaintiff was forced to resign remained employed and were not as severely disciplined as Plaintiff.  Plaintiff alleges that his race, not his actions on April 28, 2021, culminated in his forced resignation.  Plaintiff's allegations are sufficient for his Section 1981 claim for racial discrimination to survive a motion to dismiss.  *See Jones v. Eli Lilly & Co.*, 2021 U.S. Dist. LEXIS 188903, 2021 WL 4502810 at * 27-28 (D. Md. Sept. 20, 2021) (holding that a plaintiff's complaint gave rise to a "reasonable inference that, but for her race, [p]laintiff would not have been subjected to race-based disparate treatment" where the plaintiff pled "sufficient facts showing the more favorably treated co-workers were true comparators in that the co-workers held the same position, performed the same work, and were supervised by the same individuals as Plaintiff") (citations omitted); *see also Grant v. Atlas Rest. Grp., LLC,* 2021 U.S. Dist. LEXIS 126350, 2021 WL 2826771, at *3 (D. Md. July 7, 2021) (finding that the plaintiff's Section 1981 claim survives motion to dismiss where plaintiff satisfied "but-for" standard by pleading similarly situated comparator)*; Acosta*, 2021 U.S. Dist. LEXIS 126350, 2015 WL 795108, at *4 (granting motion to amend where the plaintiff sufficiently alleged existence of similarly situated employees).  The Motion will be denied as to Count II.

### III. SECTION 1981 – RETALIATION

"Section 1981 'encompasses retaliation claims' for opposing race discrimination in employment."  *Ali v. BC Architects Eng'rs, PLC,* 832 Fed. Appx. 167, 172, (4th Cir. 2020)

(quoting *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 446, (2008)). "An employee opposes race discrimination when [he] 'communicates to [his] employer a belief that the employer has engaged in' such discrimination." *Id.* (quoting *Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 555 U.S. 271, 276 (2009)) (alteration and internal quotation marks omitted). "An employee is protected from retaliation not only for reporting 'employment actions actually unlawful under [§ 1981] but also employment actions she reasonably believes to be unlawful.'" *Id.* (quoting *Boyer-Liberto v. Fountainebleau Corp.*, 786 F.3d 264, 282 (4th Cir. 2015)) (alterations and internal quotation marks omitted). "And in line with other § 1981 claims, to state a § 1981 retaliation claim, a plaintiff must allege facts rendering it plausible that, but for her participation in protected activity, she would not have suffered a materially adverse action."

Defendants attack Plaintiff's 1981 retaliation claim on the basis that Plaintiff has not pled allegations sufficient to support a causal connection between Plaintiff's alleged protected activity and his adverse employment action because of the extensive lapse of time between the two. (ECF No. 18-1 at 26.)

Satisfying causation at the pleading stage is "not an onerous burden;" retaliation plaintiffs "do not have to show at the prima facie stage that their protected activities were but-for causes of the adverse action." *Strothers v. City of Laurel*, 895 F.3d 317, 335 (4th Cir. 2018). Plaintiff must allege facts plausibly supporting an inference of causation, a task that may be accomplished by alleging facts that show the employer took an adverse action "soon after becoming aware" of protected activity. *Id.* at 336. If a plaintiff alleges causation by temporal proximity alone, the adverse action must be "very close" to the protected activity. *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (*per curiam*) (citing with approval cases where courts found periods of three and four months too long.)

The Complaint alleges that:

> Plaintiff engaged in statutorily protected activity when he opposed racially discriminatory practices in the workplace, including by complaining about race discrimination during his meeting with Chief Duncan in June 2020 and complaining about race discrimination to supervisors on or about March 27, 2021.

(ECF No. 15, ¶ 76.)

> Nevertheless, as a direct result of and in response to Plaintiff's protected activities Defendants subjected him to materially adverse action(s), including the following: (a) subjecting him to a December 1, 2020 meeting with Sgt. Thompsen and Capt. Brewer about baseless performance issues; (b) subjecting him to a December 4, 2020 meeting with Sgt. Thompsen and Corporal Foy about the same alleged performance issues discussed on December 1, 2020; (c) issuing to Plaintiff a Counseling Observation Form on December 10, 2020, sanctioned by Chief Duncan; (d) on March 27, 2021 the lieutenant, sergeant and corporal of Plaintiff's division actively discouraged him from filing a written complaint of race discrimination against 2 white officers who made racial "jokes" in Plaintiff's presence; (e) failing to conduct any investigation or otherwise take any corrective action about Plaintiff's March 27, 2021 verbal complaint; (f) indefinite suspension on April 28, 2021 for alleged violation of SPD's social media policy and/or Code of Conduct; (g) forced resignation/termination of Plaintiff on May 12, 2021 for alleged violation of SPD's social media policy and/or Code of Conduct; and (h) blocked his access to SPD's public social media sites that share important information for city residents and visitors.

*Id.* ¶ 78.

> But for Plaintiff's protected activities he would not have been subjected to the retaliatory actions set forth above because even if he violated SPD's social media policy and/or Code of Conduct, the disciplinary matrix did not provide for termination and similarly situated white dispatchers who engaged in similar or more egregious conduct, as set forth in this Amended Complaint, were not disciplined much less terminated.

*Id.* ¶ 79.

Here, Plaintiff's allegations regarding his protected activity do not support an inference of

causation. Plaintiff's first alleged protected activity occurred in June of 2020 when he met with Defendant Duncan to discuss being denied access to a meeting involving Black Lives Matter protests (ECF No. 15, ¶¶ 16-17); and "other problems that Officer Jones perceived or experienced at the Salisbury Police Department that were related to race." *Id.* ¶ 17. The June 2020 meeting with Defendant Duncan was more than ten months before Plaintiff's paid suspension and ultimate forced resignation. Even if the court were to consider Plaintiff's allegations regarding the other "materially adverse" actions preceding his May 2021 resignation, they do not cure the lack of causation inference. The majority of the "materially adverse" actions Plaintiff alleges occurred in 2020 and therefore do not support the inference that his alleged protected activity led to his forced resignation on grounds of race in the spring of 2021. *See King v. Rumsfeld*, 328 F.3d 145, 151 n.5 (4th Cir. 2003) (finding that two-and-a-half months is probably too long a lapse in time, barring other circumstances that explain the gap); *see also Causey v. Balog*, 162 F.3d 795, 803 (4th Cir. 1998) (finding that "[a] thirteen month interval between the charge and termination is too long to establish causation absent other evidence of retaliation.").

If too long a period of time passes between the protected activity and the retaliatory conduct, Plaintiff can still overcome a motion to dismiss if he alleges facts to support a finding that during the "intervening period" between the protected activity and retaliatory conduct other conduct by Defendants suggests or supports a finding of "retaliatory animus." *Pouncey v. Guilford Cty.* 2020 U.S. Dist. LEXIS 45886, 2020 WL 1274264 at * 35-36 (M.D.N.C. Mar. 17, 2020); *Lettieri v. Equant Inc.*, 478 F.3d 640, 650 (4th Cir. 2007). Still, this does not advance Plaintiff's cause.

Plaintiff's protected activity taken in March of 2021 (complaining to supervisors about racial discrimination) occurred the month before he was placed on paid suspension and forty-five

17

days before his resignation. However, the temporal connection between March 2021 and his resignation for purposes of supporting the requisite but-for causation is fatally interrupted by the April 28, 2021, incident – conduct Plaintiff admits and for which he was placed on immediate leave pending investigation for violation of "SPD Directives #702 pertaining to Social medial use." Further the alleged June 2020 protected activity (Plaintiff's meeting with Duncan) is too far afield to aid in causation by temporal proximity under any circumstances. Plaintiff does not allege facts sufficient to state a Section 1981 claim for retaliation. Count III will be dismissed.

## CONCLUSION

For the reasons set forth herein, Defendants the City of Salisbury, Maryland and Barbara Duncan's Motion to Dismiss for Failure to State a Claim, or in the alternative, for Summary Judgment (ECF No. 18) will be **GRANTED in part, DENIED in part,** as follows: the Motion will be **GRANTED** with respect to Count III; the Motion will be **DENIED** with respect to Counts I and II. Count III of the Complaint will be dismissed and the case will proceed on Counts I and II. The court will issue an accompanying order in accordance with this memorandum opinion.

/s/_____
Julie R. Rubin
United States District Judge